■ Diocese of Buffalo, Respondent, v. State of New York et al., Appellants. (Claim No. 36242.) — Judgment unanimously modified on the law and facts in accordance with the Memorandum and as modified affirmed, without costs of this appeal to any party. Certain findings of fact disapproved

and reversed and new findings made. Memorandum: In modifying the award made for the permanent appropriation of cemetery land we adopt the following basic figures which were found by the Court of Claims, based upon past experience of the cemetery and supported by evidence of record: At the time of taking in 1958 there were 13,958 graves yet unsold in the entire cemetery; average annual sales amounted to 230 graves per year, for a remaining economic life of the cemetery of 61 years; with allowance for roads, paths, etc., the number of graves available for sale from each acre of land was 996. By dividing this figure into the total number of graves unsold (13,958), we conclude that the acreage undisposed of at the time of appropriation was 14.01 acres. We also approve the court's findings that the gross sales price per grave was $85.28; the expense of sale was $10 per grave; the cost of development of the cemetery land was $4,221.47 per acre; the cost of maintenance was $559.39 per acre and the area appropriated was .942 acre. In combining these figures to determine the fair value of the land taken at the time of appropriation, we have followed the method employed in *Mount Hope Cemetery Assn.* v. *State of New York* (11 A D 2d 303, affd. 10 N Y 2d 752) by which the per acre gross sales income is reduced by expenses per acre to produce a net surplus per acre. By application of the acreage sold annually, this is converted to an annual net surplus, which is then multiplied by an Inwood coefficient * to produce the present value of the entire unsold acreage. Finally, this is reduced to present value per acre, then to present value of the acreage appropriated. Rather than the Inwood factor used by the Court of Claims — which yields the present value of a fixed amount of money to be received regularly with interest over a stated term, assuming a return of 4% per year for 61 years — we have applied an Inwood factor which reflects a 6% return over the 61-year life of the cemetery. We think that the nonliquid and speculative features of cemetery investment as well as the protracted time required to sell off all the burial spaces make excessive a valuation predicated upon a 4% return, which is available on investments much more conservative and more readily disposed of. On the other hand, we have not used an Inwood coefficient based upon an 8% annual return, which is the return an expert testified would be expected by a private investor in cemetery property, because there was proof that over the past years some graves have been furnished by claimant to indigent parishioners without charge — thus the gross sales income used in calculating fair value of the land is somewhat less than it would be if in fact each grave had been sold. We find that the gross return per acre, rounded off to the nearest dollar, is $84,938 (996 graves × $85.28), less expenses of sale (996 × $10) of $9,960, development costs of $4,221.47 and a maintenance fund of $13,984.25 (which at 4% per year will produce $559.39 annually), leaving a net surplus per acre of $56,773. The annual surplus is $13,108, arrived at by multiplying the surplus per acre by .2309, which is the portion of an acre sold annually (230 graves out of 996 graves per acre). As of the date of taking, the present value of all unsold acres, computed by multiplying the annual surplus by an Inwood factor of 16.190 (reflecting a 6% per year return for 61 years) is $212,219; the value of each of the 14.01 unsold acres is $15,148, and the value of the .942 acre taken is thus $14,269. (Appeal

---

* A table based on an Annuity Premise showing the present worth of "one per annum" which may be used to ascertain the value of an annuity, such as a lessor's interest in a leasehold or of wasting assets, such as woodlands. (See generally Friedman, Encyclopedia of Real Estate Appraising 65–78 [see p. 580 therein for its application in valuing cemetery lands]; Wixon, Accountants' Handbook 15.5 [4th ed., 1963].)

from judgment of the Court of Claims in favor of claimant on a claim for damages for permanent appropriation of cemetery land.)  Present — Williams, P. J., Bastow, Goldman, Henry and Del Vecchio, JJ.  [43 Misc 2d 337.]